UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JOYCE MOSES,

                              Plaintiff,

           -against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF PUBLIC HEALTH (DEPARTMENT OF HEALTH AND MENTAL HYGIENE) AND DR. LLOYD I. DEDERER, individually and as Executive Deputy Commissioner of the New York City Department of Health and Mental Hygiene, JANICE CHISHOLM, individually and as Assistant Commissioner of the New York City Department of Health and Mental Hygiene, and DR. JORGE PETIT, individually and as Associate Commissioner of the New York City Department of Health and Mental Hygiene,

                              Defendants.

------------------------------------------------------------------------ X

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

06 CV 5974 (JSR)(HBP)

       Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendants submit that the following material facts are not in dispute.

**Background**

       1.     Plaintiff Joyce Moses ("plaintiff"), identifies herself as a dark-skinned African-American female over the age of 40.  See Exhibit "A," Pl. Dep. at 256:4-5, 256:21-22.[1]

       2.     Dr. Lloyd I. Sederer ("Dr. Sederer") is a male over the age of forty, who is older than plaintiff.  See Exhibit "A," Pl. Dep. at 256:7-12.

---

[1] The exhibits referred to herein are annexed to the Declaration of Assistant Corporation Counsel Ivan A. Mendez, Jr., dated May 4, 2007.

3. Dr. Jorge Petit ("Dr. Petit") is a male over the age of forty. See Exhibit "B," Division of Mental Hygiene Managerial Promotion/Demotion Chart.

4. Janice Chisholm is an African American female over the age of forty. See Exhibit "C," Chisholm Dep. at 49:4-16; Exhibit "B," Division of Mental Hygiene Managerial Promotion/Demotion Chart.

5. Dr. Sederer interviewed and appointed plaintiff to the position of Director of the Office of Chemical Dependency Community Liaison ("Office of Chemical Dependency"), in the City of New York's Department of Health and Mental Hygiene ("DOHMH"), effective December, 2003. See Exhibit "A," Pl. Dep. at 158:22-161:7.

6. Dr. Sederer is the Executive Deputy Commissioner of the Division of Mental Hygiene within DOHMH. See Exhibit "D," Sederer Dep. at 13:8-13.

7. Dr. Sederer is the executive in charge of the Division of Mental Hygiene, and, as such, reports directly to DOHMH Commissioner Thomas Frieden ("Commissioner Frieden"). See Exhibit "D," Sederer Dep. at 13:14-20; see also Exhibit "E," Organizational Charts.

8. As Director of DOHMH's Office of Chemical Dependency, plaintiff was charged with, among other things: (1) serving as DOHMH's "access channel for organizations, constituents, providers, consumers, individuals and families who wish to communicate issues and concerns in relation to treatment and prevention services in chemical dependency"; (2) functioning as DOHMH's "ambassador in the communication and dissemination of information about the direction of [DOHMH], its goals and objectives and new initiatives as they relate to chemical dependency"; (3) functioning as the "chemical dependency specialist within the Division [of Mental Hygiene] and throughout [DOHMH] and serv[ing] as consultants [sic] in

addressing planning issues, budgetary concerns and overall oversight of the chemical dependency network of services"; (4) functioning as "an internal advocate, lending a voice to channel the concerns of chemical dependency constituents within [DOHMH]"; (5) handling "calls for assistance, complaints and responses for CTS assignments"; (6) handling oversight responsibilities for "the coordination of Prior Approval Reviews ["PARs"] for the Division of Mental Hygiene"; and (7) assuming a leadership role in the implementation of special projects as assigned to the Office of Chemical Dependency Community Liaison."  Exhibit "F," 2004 Performance Evaluation at 2-3.  See Exhibit "A," Pl. Dep. at 237:13-25.

       9.     During the beginning of her tenure as Director of the Chemical Dependency Office, plaintiff reported to Dr. Martha Sullivan ("Dr. Sullivan").  See Exhibit "A," Pl. Dep. at 159:11-18; Exhibit "D," Sederer Dep. at 22:11-17; Exhibit "E," Organizational Charts.

      10.    Sometime in the Summer of 2004, Dr. Sullivan left DOHMH, and Charles Browning briefly replaced her as plaintiff's supervisor.  See Exhibit "D," Sederer Dep. at 163:12-18.

      11.    In November, 2004, Charles Browning, a white male, was demoted by Dr. Sederer, and Dr. Sederer became the interim supervisor for plaintiff.  See Exhibit "D," Sederer Dep. at 166:22-167:20; Ex. "A" Pl. Dep. at 226:2-227:18; Exhibit "B," Division of Mental Hygiene Managerial Promotion/Demotion Chart.

**Plaintiff's Poor Performance**

      12.    In or about late February, 2005, plaintiff was given her 2004 performance evaluation.  See Exhibit "A," Pl. Dep. at 234:25-235:5.

13. In that evaluation, plaintiff received an overall rating of "unsatisfactory" and "needs improvement." See Exhibit "F," 2004 Performance Evaluation at 4; Exhibit "A," Pl. Dep. at 235:6-18.

14. Dr. Sederer evaluated plaintiff's performance in 2004, and noted several key areas where plaintiff's performance had been deficient, including, but not limited to, (1) completing priority assignments in a timely fashion; (2) adequately representing DOHMH in the field of chemical dependency; and (3) adequately supervising the personnel in her office. See Exhibit "F," 2004 Performance Evaluation at 5; Exhibit "D," Sederer Dep. at 147:18-150:10.

15. One example noted by Dr. Sederer concerned a request he made in September, 2004, that plaintiff assist him by preparing talking points and remarks for the "Alcoholism and Drug Abuse Recovery Month Symposium." See Exhibit "A," Pl. Dep. at 201:19-204:1; Exhibit "D," Sederer Dep. at 151:15-152:4; Exhibit "F," 2004 Performance Evaluation at 5.

16. As DOHMH's point person and content expert in the field of chemical dependency, plaintiff was expected to produce substantive remarks and talking points, including explaining how the subject of the conference related to DOHMH, and how DOHMH relates to and delivers services through and to those suffering from chemical dependency. See Exhibit "D," Sederer Dep. at 148:5-150:10; Exhibit "F," 2004 Performance Evaluation at 5.

17. Dr. Sederer testified that the remarks plaintiff prepared were "wholly unsatisfactory" and inadequate. See Exhibit "D," Sederer Dep. at 151:15-25; Exhibit "F," 2004 Performance Evaluation at 5.

18.     Nevertheless, Dr. Sederer discussed with plaintiff the deficiencies in her work product and gave plaintiff another opportunity to produce acceptable remarks for the conference.  See Exhibit "A," Pl. Dep. at 201:19-204:1.

19.     The day before the conference was to take place, plaintiff submitted a second set of remarks which were also deemed to be inadequate and unsatisfactory by Dr. Sederer.  See Exhibit "D," Sederer Dep. at 148:5-24, 151:15-25; Exhibit "A," Pl. Dep. at 201:19-204:1.

20.     As a result of plaintiff's poor performance in this task, Dr. Sederer reassigned this project to another staff member and had to complete the work himself.  See Exhibit "F," 2004 Performance Evaluation at 4; Exhibit "D," Sederer Dep. at 148:5-24.  Dr. Sederer concluded that plaintiff's work performance in this task evidenced "inadequate subject knowledge, poor time management, and inability to recognize the needs of the community to whom [he] was to be speaking."  Exhibit "F," 2004 Performance Evaluation; Exhibit "D," Sederer Dep. at 148:5-24

21.     On March 17, 2005, several weeks after receiving her 2004 performance evaluation, plaintiff filed an internal Equal Employment Opportunity ("EEO") complaint with DOHMH's Office of Equal Employment Opportunity.  See Exhibit "G," Internal EEO Complaint.

22.     Thereafter, on March 31, 2005, a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"), on plaintiff's behalf, alleging discrimination on the basis of plaintiff's age, race, color and sex.  See Exhibit "H," EEOC Charge.

23. Dr. Petit, DOHMH's Associate Commissioner for the Bureau of Program Services, also testified regarding plaintiff's lack of knowledge, competence, and leadership in the field of chemical dependency. See generally Exhibit "I," Petit Dep.

24. The Bureau of Program Services which Dr. Petit heads, encompasses the Office of Chemical Dependency, which plaintiff directed prior to her demotion. See Exhibit "I," Petit Dep. at 30:9-25.

25. Dr. Petit witnessed plaintiff's performance problems directly, and other individuals also reported to him about plaintiff's ongoing performance problems. See Exhibit "I," Petit Dep. at 30:9-25.

26. At his deposition, Dr. Petit testified that plaintiff's performance at meetings held in the local office of the State Office of Substance Abuse and Alcoholism Services ("State OASAS"), fell well below what could be expected from a high level manager such as plaintiff. See Exhibit "I," Petit Dep. at 30:9-25.

27. Dr. Petit indicated that as director of the Office of Chemical Dependency, plaintiff was expected and, indeed, required to actively participate in the meetings with the State OASAS, and discuss policy as well as programmatic and contractual issues. See Exhibit "I," Petit Dep. at 30:9-25, 31:6-32:2.

28. Dr. Petit directly observed that plaintiff's participation at these meetings was often negligible, and that plaintiff's performance was "below what would be expected of a manager." See Exhibit "I," Petit Dep. at 30:9-25; 31:6-32:2.

29. Dr. Petit also observed that plaintiff's answers to questions at these meetings with the State OASAS were "usually less than well-informed, at times not accurate or conceptually well thought through." See Exhibit "I," Petit Dep. at 31:6-32:2.

30. As director of the Office of Chemical Dependency, plaintiff was expected to "articulate areas of need, areas of policy direction, as well the larger picture about how the system works and what some of the needs are… ." See Exhibit "I," Petit Dep. at 33:14-34:4.

31. After witnessing plaintiff's performance at these meetings, Dr. Petit concluded that she failed to represent her office and DOHMH in a meaningful way, and her performance at these meetings was extremely troubling, especially in light of the fact that these meetings concerned chemical dependency issues, plaintiff's supposed expertise. See Exhibit "I," Petit Dep. at 33:14-35:17.

32. In addition to her lack of adequate knowledge and competence in the field of chemical dependency, plaintiff was also observed to have serious and continuing problems with completing priority assignments in a timely fashion. See generally Exhibit "J," E-mails regarding plaintiff's lack of responsiveness; Exhibit "K," E-mails regarding plaintiff's PAR problems; Exhibit "L," E-mails regarding the Commissioner's project.

33. For example, in January, 2005, DOHMH Commissioner Frieden's office was preparing a special mailing on the subject of alcoholism for all chemical dependency providers who contract with DOHMH, and requested that a mailing list of these providers be prepared. See Exhibit "L," E-mails Regarding the Commissioner's Project; Exhibit "A," Pl. Dep. at 229:25-230:22, 247:19-21.

34. By e-mail, dated January 20, 2005, plaintiff was asked to prepare a spreadsheet for the Commissioner, listing chemical dependency providers, including their addresses, and any other contact information, and she was also asked how long this project would take to complete. See Exhibit "L," E-mails Regarding the Commissioner's Project.

35. Eight days after receiving this important assignment, plaintiff was reminded that the assignment for the Commissioner had not yet been completed, and that it was needed immediately. See Exhibit "L," E-mails Regarding the Commissioner's Project.

36. Plaintiff failed to complete the list for the Commissioner in a timely fashion. See Exhibit "L," E-mails Regarding the Commissioner's Project.

37. When called to account for her lack of responsiveness, plaintiff indicated that her secretary had been sick for almost two weeks. See Exhibit "L," E-mails Regarding the Commissioner's Project; Exhibit "A," Pl. Dep. at 229:25-230:22.

38. Another priority assignment which was not completed in a timely fashion concerned reviewing requests submitted by chemical dependency agencies and providers for changes to their licenses, referred to as Prior Approval Requests ("PARs"). See generally Exhibit "K," E-mails regarding plaintiff's PAR problems; Ex. "M," Plapinger Dep. at 50:23-52:5.

39. Completing chemical dependency PARs in an accurate and timely fashion was an integral part of plaintiff's responsibilities as Director of the Office of Chemical Dependency. See Exhibit "A," Pl. Dep. at 171-73; Exhibit "M," Plapinger Dep. at 33:4-13; Exhibit "F," 2004 Performance Evaluation at 3; Exhibit "D," Sederer Dep. at 19:23-21:8.

40. Plaintiff was often reminded that her work with respect to PARs was past due. See, e.g., Exhibit "N," Past-due PAR chart; Exhibit "M," Plapinger Dep. at 56-61; Exhibit "K," E-mails regarding plaintiff's PAR problems. Plaintiff often either failed to respond to PAR requests, or simply responded to these requests after her deadlines had passed. Id.

41. Plaintiff's inability to complete PARs in a timely fashion created backlogs, and generated more work for her colleagues and supervisors.  See Exhibit "M," Plapinger Dep. at 59:3-23; Exhibit "K," E-mails regarding plaintiff's PAR problems.

42. Plaintiff's lack of responsiveness was not only observed in connection with the completion PARs.  A variety of supervisors, co-workers, and individuals from outside the DOHMH complained that plaintiff did not return their telephone calls or respond to E-mails without follow-up requests or prompting from her supervisors.  See Exhibit "J," E-mails regarding plaintiff's lack of responsiveness; Exhibit "F," 2004 Performance Evaluation at 5; Exhibit "O," 2005 Performance Evaluation; Exhibit "M," Plapinger Dep. at 56-61; Exhibit, "L," E-mails Regarding the Commissioner's Project; Exhibit "C," Chisholm Dep. at 56:21-57:6.

43. On October 27, 2005, plaintiff's supervisor, Janice Chisholm, sent plaintiff an e-mail stating the following: "- Connie Cunningham, Chief Program Officer, Bailey House – Said that she spoke with you several months ago and has left follow-up messages requesting your return call, to no avail – Said that she is awaiting a site visit from you in order to pursue application process."  See Exhibit "J," E-mails regarding plaintiff's lack of responsiveness, at Bates No. D000326.

44. In other e-mails, plaintiff was reminded that she should acknowledge receipt of messages and not wait days or weeks prior to responding.  See Exhibit "J," E-mails regarding plaintiff's lack of responsiveness, at Bates Nos. D000391-D000392.

45. Plaintiff's supervisor, Janice Chisholm, testified that she met with plaintiff on a weekly basis to discuss plaintiff's schedule and to make sure that plaintiff was completing her assigned tasks and meeting her deadlines and commitments.  See Exhibit "C," Chisholm

Dep. at 63:11-64:9; Exhibit "I," Petit Dep. at 50:8-20, 93:7-94:19; Exhibit "P," E-mails regarding the supervision of plaintiff.

46. Ms. Chisholm also testified that Plaintiff turned in assignments late, or "very often would complain that" Ms. Chisholm was giving her assignments and asking her to do things that plaintiff considered "outside of her responsibility." See Exhibit "C," Chisholm Dep. at 56:21-57:6, 57:20-58:9.

47. Plaintiff received an unsatisfactory performance evaluation for 2005, noting, among other things, that plaintiff (1) "failed to produce comprehensive, timely responses to priority tasks on more than one occasion"; (2) required "regular promoting regarding follow through with staff expectations"; and (3) "failed to make significant contributions to leadership/managerial discussions and planning." Exhibit "O," 2005 Performance Evaluation at 3.

48. In May, 2006, plaintiff was demoted from her position as Director of DOHMH's Office of Chemical Dependency. See Exhibit "Q," Demotion Memo; Exhibit "I," Petit Dep. at 44:2-11.

49. Dr. Petit testified that at the time he decided to go forward with plaintiff's demotion, he was unaware that she had filed internal and external EEO complaints. See Exhibit "I," Petit Dep. at 61:7-20.

**Federal Complaint And Plaintiff's Allegations**

50. Plaintiff commenced the instant action on August 4, 2006, alleging that defendants discriminated against her on the basis of her age, gender, race, and color by, among

other things, giving her unsatisfactory performance evaluations for the years 2004 and 2005, and demoting her in May, 2006.[2]  See Exhibit "R," Complaint at ¶¶ "16" through "26."

51. Plaintiff also claims that defendants retaliated against her after she filed internal and external charges of discrimination on May 17 and May 30, 2005.  See Exhibit "R," Complaint at ¶¶ "27" through "41."  Specifically, plaintiff claims that (1) her E-mails and work have been scrutinized and used against her; (2) she has been kept "out of the information loop"; (3) she was told by Dr. Sederer that he received her EEOC complaint; (4) she did not receive an evaluation or tasks and standards for 2005 and 2006; (5) Dr. Sederer required plaintiff to document her work activities since November, 2004; (6) she received an E-mail while she was on bereavement leave requiring her to document and justify her performance; and (7) she was placed two levels down on the reporting chain of command.  See id. at ¶¶ "29" through "41."

52. Plaintiff alleges that defendants have also created a discriminatory hostile work environment by, *inter alia*, treating her differently, or worse, than other similarly situated employees; talking to her in a hostile and demeaning manner; giving her assignments that were allegedly not included in her tasks and standards; "micromanaging" her; giving her too many time-sensitive assignments; giving her two unsatisfactory employment evaluations; and eventually demoting her.  See Exhibit "A," Pl. Dep. at 216:23-225:22, 260:9-20, 267:7-24, 293:12-22; Exhibit "R," Complaint at ¶¶ "13" and "74."

53. Plaintiff testified that Dr. Sederer never made any remarks to plaintiff regarding her age, color, sex or race.  See Exhibit "A," Pl. Dep. at 260:9-20.

---

[2] The claims are brought under Title VII of the Civil Rights Act of 1964, ("Title VII"), the Age Discrimination in Employment Act, ("ADEA"), §§ 1981 and 1983 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1983 ("§1981," and "§1983," respectively), and the New York State Human Rights Law, codified at N.Y. Exec. Law § 296 et seq. ("State Human Rights Law").

54. Finally, plaintiff asserts State common law causes of action for intentional or negligent infliction of emotional distress, and breach of contract. See Exhibit "R," Complaint at ¶¶ "77" through "80."

Dated:   New York, New York
         May 4, 2007

        **MICHAEL A. CARDOZO**
        Corporation Counsel of the
          City of New York
        Attorney for Defendants
        100 Church Street, Room 2-193
        New York, New York 10007-2601
        (212) 788-8688

By:   **ECF**:                /s/
      Ivan A. Mendez, Jr. (IM9425)
      Assistant Corporation Counsel

| |
|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK |

JOYCE MOSES,

                                              Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

                                              Defendants.

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

**MICHAEL A. CARDOZO**

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-193
New York, New York 10007-2601


Of Counsel:    Ivan A. Mendez, Jr.
Tel No.:       (212) 788-8688


Matter No.: 2006-004455

*Service of which is hereby acknowledged*:

*New York, New York*   Dated: ...................................2007

Signed: ................................................................................

Attorney for: .......................................................................